that the presentation of a winning ticket was not essential to the plaintiff's case and that Burrillville had a duty to use due and reasonable care to effectuate the second portion of the plaintiff's wager. This situation obviously created factual issues for the jury. This determination had the effect of collaterally estopping Burrillville from relitigating this issue. Consequently the trial justice was constrained to deny the motion for directed verdict and to submit the question of fact to the jury, as he did.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

APPENDIX A

Supreme Court

No. 88-400-Appeal.

Robert Palmisciano

v.

Burrillville Racing Association et al.

ORDER

This case came before a three-member panel of this court on June 14, 1989 pursuant to an order directing both parties to show cause why the appeal from the entry of summary judgment for defendant should not be summarily decided.

After considering the arguments and memoranda of counsel, we are of the opinion that cause has not been shown. Therefore, plaintiff's appeal is sustained. The judgment appealed from is reversed and the case remanded for trial.

Entered as an Order of this Court this 19th day of June 1989.

By Order,
s/Brian B. Burns
Matthew J. Smith
Clerk

Mr. Justice Kelleher and Mr. Justice Weisberger did not participate.

Mary M. LISI, Chief Disciplinary Counsel,

v.

Ronald J. RESMINI.

No. 92-15-M.P.
No. (DB 673).

Supreme Court of Rhode Island.

Feb. 17, 1992.

Disciplinary proceedings were brought against member of the bar. The Board of the Supreme Court's Disciplinary Board recommended 60-day suspension. The Supreme Court held that falsely signing client names to interrogatories and directing that signatures be falsely "notarized" warrants one-year suspension from practice.

Suspended.

Murray, J., dissented, and would follow recommendation of Board.

**Attorney and Client ⇐58**

Misconduct including falsely signing clients names to interrogatories, which were then "notarized" by employee in attorney's office, warrants one-year suspension.

---

Mary Lisi, Chief Disciplinary Counsel, for plaintiff.

C. Russell Bengtson, Carroll, Kelly & Murphy, Providence, for defendant.

OPINION

PER CURIAM.

Ronald J. Resmini (Resmini) has been a member of the Rhode Island Bar (bar) since June 16, 1969. In mid-June 1991 he appeared before a hearing panel of this court's disciplinary board to respond to a charge of violating Rule 4.1(a) of the Rules of Professional Conduct (the Rules) by

"knowingly * * * mak[ing] a false statement of material fact or law to a third person." Resmini was also charged with violating Rule 8.4 of the Rules, which states, "It is professional misconduct for a lawyer to * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [and] (d) engage in conduct that is prejudicial to the administration of justice."

The disciplinary counsel has charged that on three different occasions Resmini had signed the names of clients to answers to interrogatories and directed that the signatures be "notarized" by an employee in his office. The answers to these interrogatories were then filed in court. The interrogatories involved three separate clients in three separate cases. In fact Resmini has conceded the truth of the factual allegations made by the disciplinary counsel.

The first charge involved a negligence claim in which Resmini represented the plaintiff. Answers to interrogatories were submitted by Resmini's client, and supplemental answers were required. Resmini's efforts to contact his client were unsuccessful. A conditional order of dismissal was entered subject to the condition that the supplemental interrogatories were to be answered by a certain date. A paralegal in Resmini's office had previously interviewed the plaintiff and had taken extensive notes regarding the client's case. Based upon those notes, the answers to supplemental interrogatories were prepared, and Resmini personally signed the responses with the name of the client. Resmini then instructed a notary in his office to notarize the document. He then filed the document in court and mailed a copy of the document to opposing counsel.

Resmini testified that even though he was aware of his wrongdoing, he felt the case would be dismissed and the client's interest harmed if the interrogatories were not filed on time. He also acknowledged that since the case was handled by him on a contingency basis, he too would have suffered a loss if the case had been dismissed. Resmini stated that he knew of no way to reinstate the case if a dismissal order was entered. Resmini explained that his relationship with some law firms was such that a request for a continuance would be granted but in other cases it would be denied. However, in this case Resmini did not request a continuance.

Resmini was asked, "If the case were dismissed because there was no Answer filed to the Interrogatories under the Conditional Order, would that be with prejudice or without prejudice?" Resmini informed the panel that it was his belief that such a dismissal would be with prejudice. He emphasized that in such circumstances he knew "of no way of getting the case back."

The fact of Resmini's signing his client's name to the responses to the interrogatories surfaced at an arbitration hearing at which his client was present. When the client was shown a document with her purported signature affixed to it, she insisted that the signature was not hers.

In attempting to explain his conduct, Resmini stated that in each case he had been unable to locate the client and faced a conditional order of dismissal. Resmini related his unsuccessful attempts to locate the clients—including hiring an investigator and conducting a postal check. He also pointed out that in each case a paralegal had recorded the answers to the interrogatories given by the client. Resmini asserted that he was simply filing what the client had said and then had signed the document himself because of the unavailability of his client and his desire that the client not be injured by having the claim dismissed.

A complaint was subsequently filed with the disciplinary counsel, and Resmini was notified of this action. At that point Resmini consulted with the chief disciplinary counsel regarding how to resolve the matter and was advised to file a petition in court informing the court of the action he had taken. He then obtained the signature of his client on supplementary answers to interrogatories, which were filed. These differed from the original answers in certain respects. The differences focused upon the client's prior and subsequent medical history, the question of whether

Case 1:06-mc-00057-T-LDA Document 2-2 Filed 06/23/2006 Page 3 of 4



the client had been involved in other accidents, and the client's employment history.

At the hearing before the disciplinary board Resmini reported that he had checked through his records to determine if this behavior had happened more than once, and he recalled two other instances, all of which are included in the instant petition. One of the cases has been settled, and another had been settled before the interrogatories were filed. The third case is presently pending.

Resmini presented to the disciplinary board letters from more than twenty members of the bar attesting to his good character and his good works. In addition a number of witnesses testified regarding Resmini's excellent reputation and character. However, none of them were aware of any case in which Resmini had signed a client's name to a document, and many expressed surprise at this conduct.

At the hearing Resmini testified regarding his efforts on behalf of the Bar Association, the Bar Foundation, and the Committee on Continuing Legal Education. He acknowledged that he had made a mistake and assured the disciplinary board that such conduct would never be repeated. In the disciplinary board's opinion, he conveyed "general, sincere remorse for what he had done."

The disciplinary board unanimously found that Resmini was guilty of all the charges lodged against him. Resmini has argued that his actions were taken out of concern for his clients and that there was no harm in what he had done. Resmini's explanation was characterized by the hearing panel as an endorsement of the principle that the end justifies the means. The hearing panel emphasized that as long as the rules for proper conduct for a lawsuit exist, they must be followed. The board concluded that "[a]ny other result would be prejudicial to the administration of justice and result in chaos."

Resmini's argument that no harm occurred as a result of his conduct is, as the panel noted, "fallacious." Had he not signed his clients' names, Resmini indicates, the cases would have been dismissed with prejudice to any renewal of the cases. Obviously, then, harm came to the defendants who were required to continue to defend the cases and in at least one instance to enter into a settlement.

The character witnesses who appeared before the panel, together with Resmini's own testimony of mitigation and the numerous letters sent to the disciplinary board by members of the bar, repeat a familiar tale. Resmini has been a very successful attorney in cases involving personal injury. There is no question that he has been generous of his time and money with respect to many bar activities. His generosity with respect to charitable endeavors is well known as well as his involvement with the Young Lawyers Advisory Committee.

On the other hand, Resmini has been privately censured twice by this court. In addition five other complaints against Resmini were dismissed but each carried an admonition.

On other occasions we have disciplined members of the bar for conduct similar in nature to that presently before us. In one instance a respondent signed the name of his law partner as notary public attesting to the attorney's signature certifying to the service of a motion subsequently filed in court. In an appearance before this court the respondent admitted his conduct, apologized, and acknowledged that what he had done was an affront to this court. In response this court stated, "The filing of the false notarization * * * constituted a representation that the affiant had in fact made an affidavit before a notary public. In the circumstances, whether such notarization was required or not is of no consequence." *In re Berberian*, 100 R.I. 782, 784, 213 A.2d 411, 412 (1965). This court suspended the respondent from practice for three months. *Id.* at 785, 213 A.2d at 412.

In *Carter v. Jones*, 525 A.2d 493 (R.I. 1987), a respondent signed his mother's name to a power of attorney and signed his law associate's name as a notary public to the same document acknowledging his mother's signature. The respondent testified that he had his mother's permission to

sign her name and that he believed his law associate would not mind his name being signed as a notary. The disciplinary board recommended a three-month suspension. In approving the recommendation, the court stated, "The respondent's flagrant violation of the rules of conduct binding upon all attorneys in this state cannot be excused by a misguided desire for expediency, even in the absence of any actual intent to deprive another of money or valuable assets." *Id.* at 495.

As the panel noted in the instant case, "It is difficult, if not impossible, to distinguish Resmini's actions from those of Berberian and Jones. In each case, the attorney claimed to be merely, in effect, taking a short cut, and appeared to feel that no harm was being done to anyone. If there is a difference, we feel it weighs against Resmini, since, without his action, the cases would have been dismissed." However, the panel also took into consideration Resmini's good works and recommended a suspension for sixty days.

Attorney Resmini has in effect filed a false jurat[1] on three occasions with full awareness of the nature and quality of his act. Such an offense is closely akin to the crime of perjury. No justification for such an act may be derived from the desire to maintain a client's case or to defend the client against possible or probable dismissal of an action. It is the obligation of every litigant to maintain contact with his or her attorney and to keep the attorney apprised of his or her address at all times during the progress of the litigation. Failure of the litigant to fulfill this obligation may not be palliated by the filing of a false oath and a spurious notarization. Such conduct on three occasions is inexcusable.

Today we are living in times in which the public is losing confidence in the trustworthiness of the bar. Resmini's knowing violation not only contributes to this erosion of confidence but also works prejudice to his fellow attorneys, their clients, and the administration of justice. It is imperative that members of the bar demonstrate respect for the Rules and refrain from *any* conduct that is inconsistent with proper practice. Although we commend Resmini's positive actions on behalf of the bar, we do not subscribe to the recommendation of the board. Accordingly, Resmini is hereby suspended from the practice of law in this state for a period of one year, such period to commence on this date. Resmini is hereby ordered to promptly comply with Rule 42–15 of the Rhode Island Supreme Court Rules.

MURRAY, J., dissents, reaffirming her conviction that the recommendation of the board should be followed.

1. A jurat is a certificate of an officer or person before whom a writing was sworn to. The term jurat is used to designate a certificate of a competent administering officer that the writing was sworn to by the person who signed it. *United States v. Julian*, 162 U.S. 324, 16 S.Ct. 801, 40 L.Ed. 984 (1896); *United States v. McDermott*, 140 U.S. 151, 11 S.Ct. 746, 35 L.Ed. 391 (1891).

**Richard GRANT et al.**

**v.**

**Robert E. BRISKIN et al.**

**No. 91–134–A.**

Supreme Court of Rhode Island.

Feb. 20, 1992.

Landlord sued tenant, seeking damages for breach of lease. The Superior Court, Newport County, Pfeiffer, J., entered judgment for tenant. Landlord appealed. The Supreme Court, Fay, C.J., held that: (1) lease was not void ab initio, and (2) trial court improperly raised statute of frauds sua sponte.

Reversed and remanded.